UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

United States of America,

            Plaintiff,

vs.                        REPORT AND RECOMMENDATION

Scott Kimrey Goldsmith,

            Defendant.          Crim. No. 05-206 (PAM/RLE)

* * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions.

A Hearing on the Motion was conducted on July 26, 2005, at which time, the Defendant appeared personally, and by Douglas B. Altman, Esq., and the Government appeared by Michael L. Cheever, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion to Suppress be denied.

## II. Procedural and Factual Background

In a sixteen-Count Indictment, the Defendant is charged with twelve (12) Counts of failing to pay over withheld taxes, in violation of Title 26 U.S.C. §7202; and four (4) Counts of failing to file tax returns, in violation of Title 26 U.S.C. §7203. As pertinent to the Defendant's Motion to Suppress, the operative facts may be briefly summarized.[1]

The Indictment in this case is the culmination of a longstanding dispute between the Defendant, and the Internal Revenue Service ("IRS"), regarding the Defendant's tax liability for several years in the late 1990s and early 2000s. The tax liability was also the subject of a professional disciplinary proceeding against the Defendant, who is an attorney duly licensed to practice in the State of Minnesota. As part of those proceedings, the Defendant was deposed by a representative of the Minnesota Office

---

[1] Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

- 2 -

of the Director of Lawyers Professional Responsibility.  During that deposition, the Defendant, who was represented by legal counsel, advised that he did not do criminal work as a general matter.  <u>Government's Exh. 1</u>, at p. 11, lines 1-6.  The Defendant also advised that he was receiving treatment, from a mental health professional, although he did not elaborate as to exact nature of his treatment.  <u>Id.</u> at p. 62, lines 21-25, and p. 63, lines 1-23.  However, counsel for the Defendant made plain, during the course of that deposition, that the Defendant was not predicating a defense, to any charges from that Office, on his mental state or condition, and he was not waiving his medical privilege.  <u>Id.</u>

Following that deposition, the Defendant entered into a Stipulation with the Board of Professional Responsibility, which was then adopted by the Minnesota Supreme Court, and which resulted in the suspension of the Defendant's license to practice law for thirty (30) days.  See, <u>In re Disciplinary Action Against Goldsmith</u>, 679 N.W.2d 332 (Minn. 2004).  The Stipulation also imposed certain conditions upon the reinstatement of the Defendant's license, including, <u>inter</u> <u>alia</u>, a requirement that the Defendant "initiate or continue treatment by a licensed consulting psychologist or other mental health professional acceptable to the Director, and [] complete all therapy programs recommended by the therapist." <u>Id.</u> at 334.

At the Hearing on the Defendant's Motion, the Government presented the testimony of Andrew Gibart ("Gibart"), who is a Special Agent for the IRS, and who was involved in the investigation of the events that resulted in the pending charges against the Defendant. On June 17, 2004, Gibart and Kelly Petricka("Petricka"), who is also a Special Agent for the IRS, interviewed the Defendant at the Defendant's home in Long Lake, Minnesota. Prior to the interview, Gibart had reviewed the Record from the Defendant's disciplinary proceedings, including his deposition testimony, and the Stipulation, which required the Defendant to continue psychological treatment. When the Agents arrived at the Defendant's house, they were greeted at the front door by the Defendant's son, and then walked around to the backyard area. The only persons present at the interview were the Defendant, Gibart, and Petricka.

The interview commenced with Gibart and Petricka identifying themselves as Special Agents for the IRS, and informing the Defendant that he was the subject of a criminal investigation pertaining to his tax liability for the years 1999, through 2002. Gibart then advised the Defendant of his constitutional rights, using the standard non-custody form. The Defendant informed the Agents that he understood his rights, and that he was willing to answer their questions. He also stated that, in the event that he needed to consult an attorney, he would so inform the Agents, since he, himself, was

not a criminal attorney. Following that statement, Gibart again informed the Defendant that he was free not to answer any questions. The Defendant responded that he wanted to talk to the Agents.

Gibart testified that the Defendant was coherent throughout the interview, that he never asked to stop the interview, and that no threats or promises were made to induce the Defendant to answer any questions. The Defendant was also responsive to most questions presented by the Agents, although, in response to Gibart's inquiry as to why the Defendant had not filed a specific tax return, the Defendant stated that he could not agree with the Gibart's characterization -- i.e., that he did not file the return -- and that he wanted to consult an attorney before answering that question. The Agents continued to interview the Defendant, following the Defendant's response, although there is nothing in the Record to suggest that the Agents persisted in that same line of questioning.

The interview lasted approximately one (1) hour and fifteen (15) minutes, and ended when the Defendant informed the Agents that he was then taking medication to reduce the risk of suicide. The Defendant advised that he was uncertain about the effects of the medication, which prompted the Agents to terminate the interview.

### III. Discussion

A.  Standard of Review.  Government agents are not required to administer Miranda warnings to everyone whom they question.  See, Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  Rather, Miranda warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Stansbury v. California, 511 U.S. 318, 322 (1994), quoting Miranda v. Arizona, supra at 444; United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984).

Whether an accused was subjected to custodial interrogation is to be determined from the totality of the circumstances.  See, United States v. Hanson, 237 F.3d 961, 963 (8th Cir. 2001); California v. Beheler, 463 U.S. 1121, 1125 (1983).  In determining whether a suspect is "in custody," we examine whether the extent of the physical or psychological restraints, which were imposed upon the Defendant, during an interrogation by law enforcement, would have been understood by a "reasonable person in the [Defendant's] position" as being consonant with the condition of being in custody.  Berkemer v. McCarty, supra at 442; United States v. Cates, 251 F.3d 1164, 1166 (8th Cir. 2001); United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989). As the Court in United States v. Griffin, 922 F.2d 1343, 1357 (8th Cir. 1990), stated: "If [the Defendant] believed his freedom of action had been curtailed to a 'degree

associated with formal arrest,' and that belief was reasonable from an objective viewpoint, then [the Defendant] was being held in custody during the interrogation." See also, Stansbury v. California, supra at 1529; United States v. Chamberlain, 163 F.3d 499, 503 (8th Cir. 1998).

If a person is subjected to a custodial interrogation, he or she "has the right to consult with an attorney and to have counsel present during questioning." Davis v. United States, 512 U.S. 452, 457 (1994). To exercise that right, however, a suspect "must unambiguously request counsel," which "'requires at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" Id., at 459, quoting McNeil v. Wisconsin, 501 U.S. 171, 178 (1991). Furthermore, "if a suspect makes a reference to an attorney that is ambiguous or equivocal * * * [such] that the suspect *might* be invoking his right to counsel, our precedents do not require the cessation of questioning." Id. [emphasis in original]. In addition, "the Sixth Amendment right to counsel 'does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Von Kahl v. United States, 242 F.3d 783, 789 (8th Cir. 2001), quoting McNeil v. Wisconsin, supra at 175.

"The right to counsel recognized in Miranda is sufficiently important to suspects in criminal investigations, * * * that it 'requir[es] the special protection of the knowing and intelligent waiver standard.'" Davis v. United States, supra at 458, quoting Edwards v. Arizona, 451 U.S. 477, 483 (1981). Nevertheless, "[i]f the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him." Id., citing North Carolina v. Butler, 441 U.S. 369, 372-376 (1979); see also, United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994). The burden rests with the Government to prove, by a preponderance of the evidence, that the Defendant knowingly and voluntarily waived his Miranda rights. See, Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Dougherty, 810 F.2d 763, 773 (8th Cir. 1987).

Further, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination. See, Dickerson v. United States, 530 U.S. 428, 433-34 (2000). For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." Dickerson v. United States, supra at 434, citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As the Supreme Court has recently explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.]  See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant").  The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507 U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954).  See also, Withrow v. Williams, supra at 693 (listing the applicable considerations).

B.  <u>Legal Analysis</u>.  The Defendant concedes that the questioning conducted by Gibart and Petricka was not custodial, and that the Agents were not required to advise him of his rights.  See <u>United States v. Plumman</u>, 409 F.3d 919, 925 (8th Cir. 2005).  Nevertheless, the Defendant urges that his statements should be suppressed because they were involuntary, and because they were made following his express desire to consult with counsel.  In support of this assertion, the Defendant argues that, while the Agents were not required to advise him of his <u>Miranda</u> rights, their decision to do so, bound them to honor any decision by the Defendant to invoke such rights.  According to the Defendant, he invoked his right to counsel on two separate occasions during the interview.

Our Court of Appeals has recently been presented with similar arguments to those raised by the Defendant.  See <u>United States v. Harris</u>, 221 F.3d 1048, 1051 (8th Cir. 2000).  In <u>Harris</u>, the defendant agreed to participate in a noncustodial interview, after he was advised of his <u>Miranda</u> rights.  During the interview, the defendant expressed his desire to consult an attorney, and left the police station where he was being interviewed.  Approximately three hours later, the interviewing Agents questioned the defendant again, at which time, he made incriminating statements.

Based on those circumstances, the defendant argued that, although the initial interview was noncustodial, the Agents were required to honor his request for counsel, since they had advised him of his Miranda rights, in the first instance. In addressing that argument, the Court recognized the following three-way split in the authority:

> Some courts have held that the reading of the Miranda rights during a non-custodial interrogation does not afford the suspect any of those rights, since the reading is unnecessary. See, e.g., Davis v. Allsbrooks, 778 F.2d 168, 172 (4th Cir.1985); United States v. Charles, 738 F.2d 686, 693 n. 6 (5th Cir.1984); United States v. Kampiles, 609 F.2d 1233, 1242 (7th Cir.1979); United States v. Lewis, 556 F.2d 446, 449 (6th Cir.1977); State v. Haddock, 257 Kan. 964, 897 P.2d 152, 162-63 (1995). Other courts have suggested that the reading of the Miranda rights does transform a non-custodial interrogation into a custodial interrogation. See United States v. Bautista, 145 F.3d 1140, 1151 (10th Cir.), cert. denied, 525 U.S. 911, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998); Tukes v. Dugger, 911 F.2d 508, 516 n. 11 (11th Cir.1990). Finally, a third category of cases adopts a middle ground, permitting the trial court to consider the reading of the Miranda rights as one factor among many used to determine whether a suspect's

> statements are voluntary.  See Sprosty v. Buchler, 79 F.3d 635, 642 (7th Cir.1996); State v. Taillon, 470 N.W.2d 226, 229 (N.D.1991).

Id.

While the Court noted that it was "disinclined to adopt" the defendant's argument, it did not decide the issue, and instead, found that the break in "custody" between the defendant's invocation, and the subsequent questioning, rendered his statements admissible.

As was the case in Harris, we need not resolve the question of whether the Agents were required to honor the Defendant's invocation of his right to counsel, since, even if they were, the Agents fully complied with his invocation. United States v. Jacobs, 97 F.3d 275, 280 (8th Cir. 1996)("[A] limited invocation of the right to counsel does not preclude the admissibility of statements a defendant makes which fall outside the limited invocation."), quoting United States v. Boyer, 914 F.2d 144, 146 (8th Cir. 1990), cert. denied, 499 U.S. 908 (1991); see also, Connecticut v. Barrett, 427 U.S. 523, 529 (1987)(finding that officers' interrogation did not violate Miranda where the suspect refused to provide a written statement, outside of the presence of counsel, but agreed to be interviewed orally).

Here, the uncontradicted testimony of Gibart discloses that the Defendant expressed his desire to talk to the Agents, after having been advised of his <u>Miranda</u> rights, but qualified that intention by stating that he would not answer certain questions, without the benefit of counsel, if he found those questions to be objectionable. Later in the interview, the Defendant expressed his objection to a certain specific question, and advised that he would not answer that question without the assistance of counsel. There is no suggestion that the Agents persisted in their questioning of the Defendant on that same inquiry, and the Defendant does not contend to the contrary.

To the extent that the Defendant's statements can be construed as an unequivocal invocation of his right to counsel, at most, it is a limited invocation. See <u>United States v. Jacobs</u>, supra at 280(a defendant's statement that he would want to have counsel present in the event that he was asked to take a polygraph test was a limited invocation of right); <u>United States v. Boyer</u>, supra at 146(statements made after the Defendant had refused to assist in making a tape-recorded telephone call, in the absence of counsel, did not require the suppression of statements which fell outside of the limited invocation). Accordingly, since there has been no suggestion that the Agents acted outside of this invocation, we find that the conduct of the Agents is insufficient to require suppression of the Defendant's statements.

The Defendant has also argued that his statements should be suppressed because they were involuntary. Specifically, the Defendant has directed our attention to the Agents' awareness of his deposition testimony, as well as the terms of the Stipulation, both of which he argues should have put the Agents on notice that he was undergoing psychological counseling, and was, therefore, more susceptible to the inherent pressures of interrogation.

Contrary to his assertions, a review of the Record presented reflects that the Defendant's statements were voluntary. Specifically, the interview of the Defendant occurred in the backyard of his home, following a <u>Miranda</u> advisory, and was not inordinately lengthy. Indeed, the Defendant has not identified any conduct by the Agents which could reasonably be construed as evidence of police dominance, or police coercion. Rather, the Record reflects that the Defendant was fully informed of his rights, and that the interview was conducted without the Defendant being promised any benefits, or threatened in any manner. Therefore, since coercive police conduct is a "necessary predicate" to finding a statement involuntary, <u>Colorado v. Connelly</u>, supra at 167; <u>Thatsaphone v. Weber</u>, 137 F.3d 1041, 1046-1047 (8th Cir. 1998);

Holman v. Kemna, supra at 421, we hold that the Defendant's statements were not involuntary.[2]

In sum, having found that the Agents acted in a manner that was consistent with the requirements of Miranda, and that the Defendant's statements were not otherwise

---

[2] Since we conclude that the Agents honored the Defendant's limited invocation of his right to counsel, and since there is no evidence to suggest duplicity, or undue pressure upon the Defendant, the Agents' actions cannot be construed to constitute coercive police conduct.

To the extent that the Defendant suggests that his mental state impacted upon the voluntariness of his interview, we are not so persuaded, given the Record presented. First, during his deposition at the instance of the Director of Lawyers Professional Responsibility, the Defendant's legal counsel, without objection from the Defendant, unequivocally declined any reliance upon the Defendant's mental health as a defense to the professional charges which were then being investigated. In addition, the Defendant was only suspended from the practice of law for a brief period of time and, while the Minnesota Supreme Court's allowance of the Defendant's return to practice was conditioned on his initiation, or continuance of treatment by a licensed consulting psychologist, the simple fact is that the Defendant was being allowed to return to the practice of law -- a circumstance which would be enigmatic, indeed, if the Supreme Court were concerned about the Defendant's mental capacity to make judgments which could adversely impact upon his clients.

In addition, the testimony of Gibart is uncontroverted, that he appeared to understand the questions posed, and to respond appropriately. Accordingly, we find no evidence to suggest that the Defendant's questioning was involuntary in view of the fact that he was taking medications for suicidal ideations. Most notably, the Defendant has presented no evidence that his medications had any impact on his capacity to consent to the questioning of the Agents.

involuntary, we recommend that the Defendant's Motion to Suppress Confessions or Statement in the Nature of Confessions be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions [Docket No. 15] be denied.

Dated:  August 16, 2005          *s/Raymond L. Erickson*

                                      Raymond L. Erickson
                                      UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 2, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 2, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.